**Ruby KING, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SNYDER'S OF HANOVER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 8, 1998.

Decide June 5, 1998.

Ralph D. Oyler, Gettysburg, for petitioner.

Cindy J. Murphy, Harrisburg, for respondent.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue before this Court is whether an expert's testimony that relies in part upon facts not yet in the evidence, but later introduced, is competent to support an employer's burden of proof for a suspension petition.

Ruby King (Claimant) appeals from the order of the Workers' Compensation Appeal

Board (WCAB) that affirmed the Workers' Compensation Judge's (WCJ) denial of benefits to Claimant. We affirm.

Claimant worked for Snyder's of Hanover (Employer) as a twister operator making pretzels. On May 5, 1993, Claimant sustained a repetitive-use injury to her left shoulder. Employer paid Claimant total disability benefits pursuant to a notice of compensation payable.[1] On October 6, 1993, Claimant underwent surgery, but she returned to work on October 11, 1993.

On January 3, 1994, Claimant was released to work a maximum eight-hour day. On May 2, 1994, John S. Kruper, M.D., an orthopedic surgeon, examined Claimant. Dr. Kruper found Claimant's injury was fully resolved and that Claimant no longer needed medical treatment, even though left shoulder tenderness could persist for an additional six months. Dr. Kruper found Claimant capable of performing her position in excess of eight hours per day and could work twelve hours per days as long as her duties did not include overhead lifting or elevation of her arms above the shoulders. As a result of Dr. Kruper's examination, Employer offered Claimant overtime hours, but she refused Employer's offer.

On May 31, 1994, Employer filed a petition for termination, which was later amended to a suspension petition because Claimant was medically cleared to work overtime in the light-duty position and that a minimum of sixteen hours per week was available to Claimant.[2] With the additional wages from the overtime hours added to her existing wages, Claimant would no longer have a wage loss, and thus, Employer would be entitled to suspend her benefits.

At the hearing before the WCJ, Claimant testified and offered the deposition testimony of Perry Eagle, M.D. Employer introduced Dr. Kruper's testimony, as well as the testimony of Sandra Horick, Employer's occupational nurse. Nurse Horick viewed the position Claimant was performing as well as the various job duties associated with that position. The job duties were also shown via videotape, which was admitted into evidence.

The WCJ accepted the testimony of Nurse Horick, as well as the testimony of Dr. Kruper, as credible. Because Claimant was able to work up to twelve hours per day and in light of her refusal to work the overtime hours, the WCJ suspended Claimant's benefits. On appeal, the WCAB affirmed.

On appeal to this Court,[3] Claimant argues that the WCJ erred in finding Dr. Kruper's testimony competent because his testimony was based upon evidence outside the record. The following excerpt from Dr. Kruper's testimony sets the background for the controversy:

Q. Doctor, do you have an opinion regarding Ms. King's ability to work in her position at Snyder's of Hanover as a packer in excess of an 8–hour work day?

A. It is my medical opinion that she certainly is capable of working beyond an 8–hour day. It is my understanding of this packing job that she is not required to elevate her arms above the shoulder level to perform this job. Therefore, the 8–hour restriction would have no bearing on the shoulder surgery and the biceps tendonitis.

Q. Doctor, as a follow up question, do you have an opinion or do you believe that she would be able to work overtime for a maximum of a 12–hour work day?

A. Yes.

\* \* \*

Q. Dr. Kruper, I believe that you testified, and I'm sure you will correct me if I'm wrong, that it is your understanding that [Claimant] does not have to lift her

---

1. Claimant subsequently received partial compensation benefits pursuant to a series of supplemental agreements executed between the parties.

2. Prior to her injury, Claimant had been working, three eight-hour days and two twelve-hour days per week, for a total of forty-eight hours per week.

3. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704.

arms above her head in the course of her present employment?

A. That's correct.

Q. Where did you obtain that information?

A. Part of that information came from the description that the individual told me of her job at the time of this consultation, and part of it also came from talking with [Employer's counsel] ... this morning.

Q. I'm looking at the report, which I believe is labeled as Deposition Exhibit Number 2. On page one of that report, which you have authenticated, she reported to you that "at present she does a variety of positions. One of the jobs requires lifting 20–pound tubs over her head and she isn't able to do this."

A. Yes. She told me she was not doing that job.

(36a, 38a–39a).

At the end of Dr. Kruper's testimony, Claimant's counsel objected that Dr. Kruper based his opinion upon information, which was not part of the record provided to him. Employer's counsel responded, stating that any information provided to the doctor, which was not part of the record, would be introduced either by testimony of Nurse Horick or through videotape. However, Claimant asserts here that because Dr. Kruper relied on this evidence not yet of record that his testimony is incompetent. We do not agree.

In *Yantos v. Workmen's Compensation Appeal Board (Vulcan Mold & Iron Co.)*, 128 Pa.Cmwlth. 231, 563 A.2d 232 (1989), we held that:

> It is a basic tenet of expert testimony that, while an expert witness may base an opinion on facts of which he has no personal knowledge, those facts upon which his opinion is based must be supported by evidence in the record.

*Id.*, 563 A.2d at 235. Dr. Kruper based his testimony not only on the description of the job provided by Employer's counsel but by the history as relayed by Claimant, his review of medical records, x-rays, ergometric strength testing and physical findings. Claimant herself told Dr. Kruper she did not have to lift overhead to perform her job.

Second, Nurse Horick, Employer's occupational nurse, confirmed that Claimant personally viewed Claimant's position and the job required no overhead lifting. Further, videotape of the job duties, shown to the WCJ, was introduced as evidence.

In *Keilbach v. Metropolitan Life Insurance Co.*, 157 Pa.Super. 590, 43 A.2d 652 (1945), the court held that the fact that the evidence relied upon by a medical expert was not introduced into evidence until after the doctor had testified did not destroy the competency of the doctor's opinion. The court made it clear that the order of evidence is an administrative function. Further, in *Maher v. College Club of Pittsburgh*, 427 Pa. 621, 235 A.2d 134 (1967), the Supreme Court held that the competency of an expert's opinion is not affected when based on facts not in the record at the time of giving of the opinion, so long as counsel offers to prove the assumed facts by later testimony.

While Dr. Kruper's testimony had sufficient basis when given, any facts relied upon which may not have been in evidence at the time Dr. Kruper rendered his opinion, were later introduced into evidence. Therefore, we hold that the WCJ, as affirmed by the WCAB properly held Dr. Kruper's testimony competent.

■ Claimant also argues that the WCJ erred in failing to award costs and counsel fees pursuant to Section 440 of The Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 996. Section 440 of the Act provides, in pertinent part:

> [I]n any contested case where the insurer has contested liability in whole or in part, including contested cases involving petition to ... reduce or otherwise modify compensation awards, agreements or other pay-

ment arrangements, ... the employee or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part, shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorneys fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings.

While Employer originally filed a termination petition, which it amended to include a suspension petition,[4] that amendment did not mean that Employer lost and Claimant won. The issue, thus, became Claimant's suspension of benefits. Because the suspension of benefits was not finally determined in whole or in part in Claimant's favor, as required by Section 440 of the Act, the WCJ did not improperly fail to grant costs and fees to Claimant.

Accordingly, we affirm.

### ORDER

AND NOW, this 5th day of June, 1998, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

4. This was done without objection by Claimant's counsel.